**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- X

SAJA KHALIL and DANA AYOUB

Plaintiffs,

- against -

CITY OF NEW YORK and NYPD OFFICER JANE DOE 1,

Defendants.

---------------------------------------------------------------------- X

Civil Case No.

**COMPLAINT**

Plaintiffs Saja Khalil and Dana Ayoub, by and through their attorneys, Cohen and Green PLLC, the Aboushi Law Firm PLLC, and Gideon Orion Oliver, as and for their Complaint, allege as follows:

## PRELIMINARY STATEMENT

1. In accordance with the tenets of their Muslim faith, many Muslim women, including Plaintiffs Saja Khalil and Dana Ayoub, wear headscarves, known as hijabs, in the presence of any man who is not their immediate family member.
2. Pursuant to a So-Ordered Stipulation of Settlement entered on November 5, 2020, the New York City Police Department ("NYPD") enacted a policy in its Patrol Guide ("P.G.") to govern the removal of religious coverings during post-arrest processing.[1]
3. In a glaringly direct contravention of its policy, however, NYPD members unlawfully searched Plaintiffs' person causing Plaintiffs' hair to be exposed in the presence of male NYPD members, in violation of Plaintiffs' religion.

## JURISDICTION

[1] *Elsayed et al., v City of New York et al.*, No. 18-cv-10566 (AT)(KHP), (S.D.N.Y.), Dkt. No. 78; NYPD - Public Patrol Guide Section 208-83 Arrests – Religious Head Covering Guidelines – last accessed 12/19/2024, https://www.nyc.gov/assets/nypd/downloads/pdf/public_information/public-pguide1.pdf

4. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331.

5. This action arises, in part, under the Religious Land Use and Institutionalized Person Act, 42 U.S.C. §2000cc *et seq.*, and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

6. Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367 over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy.

**VENUE**

7. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) as at least one of the Defendants resides in this district and, upon information and belief, all Defendants are residents of the State of New York.

**PARTIES**

8. Plaintiff Saja Khalil ("Plaintiff" and/or "Saja Khalil") is a resident of the City of New York, County of Staten Island, and State of New York. She is a Muslim and observes hijab.

9. Plaintiff Dana Ayoub ("Plaintiff" and/or "Dana Ayoub") is a resident of the City of New York, County of Queens, and State of New York. She is a Muslim and observes hijab.

10. Defendant City of New York (the "City") is a municipal entity created and authorized under the laws of the State of New York. The City is authorized by law to maintain a police department and does maintain the New York Police Department ("NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

11. NYPD Officer Jane Doe 1, at all times relevant hereto, is an NYPD Police Officer acting in the capacity of agent, servant, and employee of the City of New York, and within the

scope of her employment. She is sued in her individual and official capacities.

12. Plaintiffs do not know the true name of Defendant Doe 1, but upon information and belief, her identity and name are known to the City.

13. At all times relevant herein, Defendant NYPD Officer Jane Doe 1 acted under color of state law in the course and scope of her duties and/or functions as agent, employee, and/or officer of the City and/or the NYPD, and incidental to the lawful pursuit of her duties as agent, employee, and/or officer of the City and/or the NYPD.

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

14. Plaintiffs each timely served a Notice of Claim upon the City of New York by e-filing same with the Comptroller's Office on August 26, 2025, within ninety days of the events giving rise to each of their claims.

15. Plaintiffs each attended a hearing pursuant to section 50-h of the New York General Municipal Law on October 17, 2025.

16. More than thirty days have elapsed since each Plaintiff served a Notice of Claim and the City has not offered adjustment or payment thereof.

## JURY DEMAND

17. Plaintiffs demand a trial by jury in this action on each and every one of the claims for which a jury trial is legally available.

18. Saja Khalil and Dana Ayoub are practicing Muslim women.

19. Ms. Khalil is a fourth-year undergraduate student at CUNY John Jay College of Criminal Justice, who plans to attend law school upon graduation.

20. Ms. Ayoub is a second-year student at the City College of New York.

21. Ms. Khalil and Ms. Ayoub wear a religious headscarf that covers their ears, hair, and neck, but not their face—as an expression of their sincerely held religious beliefs to maintain

hijab. The Arabic word hijab (literally translated as "barrier" and derived from the root word, hajaba, meaning to screen or cover from view) is an Islamic practice that encompasses modest dress, behavior, and demeanor. Hijab is commonly represented by a headscarf that Muslim women wear as an expression of faith, dignity, and obedience to God.

22. Ms. Khalil and Ms. Ayoub's beliefs with respect to the headscarf are grounded in the teachings of the Holy Qur'an, the holy scripture of Islam. The Qur'an is believed by Muslims to be the literal word of God. Additionally, Ms. Khalil and Ms. Ayoub follow the teachings and tradition of the Prophet Muhammad (S.A.W.S.), as transmitted through Hadith, oral traditions carried down from the time of the Prophet Muhammad (S.A.W.S.).

23. To an observant Muslim, like Ms. Khalil and Ms. Ayoub, the veil becomes inextricably part of herself: a reflection of her dignity and an expression of her religious observance and identity. To force Ms. Ayoub, as the City did, to be without her headscarf in front of a camera and Ms. Khalil without her headscarf in the lobby, which was in front of a dash camera and security cameras, as well as in the holding cell, with the possibility of men seeing them is to violate their autonomy and religious beliefs, in particular the right to practice hijab. The City's disrespectful conduct towards Ms. Khalil and Ms. Ayoub not only violated their freedom of religious expression but humiliated them and undermined their dignity.

**<u>*Clark* and *Elsayed* Suits</u>**

24. On March 16, 2018, a putative class action suit was filed on behalf of individuals who were (a) arrested by or in the custody of the NYPD (b) required to take a post-arrest Booking Photograph while in any NYPD facility; and [(c)] forced to remove any religious head covering for that Booking Photograph pursuant to the Photograph Policy or any other

written or unwritten policy of the NYPD." *Clark et al. v. City of New York et al.*, No. 18-cv-2334 (AT)(KHP), (S.D.N.Y.), Dkt. No. 1 at ¶ 69. The *Clark* Complaint in its entirety is incorporated by reference and attached hereto as Exhibit 1.

25. On November 13, 2018, another putative class action suit—filed by Plaintiffs' counsel here—was also filed on behalf "all persons who have been or will be subjected to the NYPD's policy, practice, and/or custom of removing or forcing removal of Muslim women's hijab's worn as an expression of and adherence to their sincerely held religious beliefs." *Elsayed et al., v City of New York et al.*, No. 18-cv-10566 (AT)(KHP), (S.D.N.Y.), Dkt. No. 1 at ¶ 137. The *Elsayed* Complaint in its entirety is incorporated by reference and attached hereto as Exhibit 2.

26. The injunctive and policy-related claims in the *Clark* and *Elsayed* matters were resolved by a So-Ordered Stipulation of Settlement (hereinafter the "Stipulation"). *Elsayed* Dkt. No. 78, incorporated by reference and attached hereto as Exhibit 3.

27. As part of the Stipulation, the *Clark* and *Elsayed* plaintiffs, the City of New York and the NYPD agreed to implement a jointly drafted NYPD Patrol Guide ("P.G.") Section 208-83.

28. P.G. 208-83 emphasizes that "[p]risoners will retain their religious head coverings while in Department custody, except in the limited circumstances described below."

29. P.G. 208-83 provides, *inter alia*, that "when an arrestee is wearing a religious head covering: [t]he arresting officer [must] "inform prisoner wearing a religious head covering that it must be temporarily removed and searched, [a]dvise prisoner that removal and search will be conducted in private, and that search will be conducted by a member of the service of the same gender." *Id.* at 1.

30. The Desk Officer must then "Ensure a search of religious headgear is conducted by a member of the service of the same gender as the arrested person, in a secure area, in privacy where possible, and in the presence of only those members of the service reasonably necessary to conduct the search and is consistent with the prisoner's beliefs." *Id.* at 2.

31. P.G. 208-83 also provides specific conditions under which a head covering may be taken for safekeeping, which includes providing a replacement, and conditions under which a photograph without the headscarf may be taken and stored. *Id.* at 2-4.

32. P.G. 208-83 was in effect when Ms. Khalil was arrested and remains in effect as of the date of this Complaint.

33. Upon information and belief, pursuant to the *Clark* and *Elsayed* Stipulation, P.G. 208-83 has been amended, but is pending publication, to include language explicitly barring a search of individuals who wear a headscarf in the view of security cameras. The amendments would mandate the same procedures for removal of a headscarf incident to search as those in place for a strip search.

## **STATEMENT OF FACTS**

34. On or about 12:30 p.m. on May 30, 2025, and thereafter, at or around CUNY City College of New York's South Campus Lawn, at 160 Convent Avenue, Ms. Khalil and Ms. Ayoub participated in a protest at their university's undergraduate graduation, demanding that CUNY divest from entities profiting from the genocide in Gaza.

35. Ms. Khalil and Ms. Ayoub were arrested at the graduation ceremony by CUNYPS officers, who transported Ms. Khalil and Ms. Ayoub to the NYPD's 26th precinct.

36. When they arrived at the precinct, NYPD member Jane Doe 1 escorted the CUNYPS officer and Plaintiffs to the holding cell area.

**Plaintiff Saja Khalil's Experience**

37. NYPD members also unlawfully searched Ms. Khalil's person.

38. Shortly after Ms. Khalil arrived at the 26th Precinct, she was taken to the lobby of the Precinct.

39. In the "lobby" of the precinct stationhouse, in front of an NYPD desk, NYPD member Jane Doe 1, whose true name and identity is not known to Plaintiffs at this time, conducted a search of Ms. Khalil.

40. Defendant Doe 1 made Ms. Khalil take off her shoes, checked under her sleeves and did a "bra check" in front of male NYPD members.

41. At the time, Ms. Khalil was wearing a baseball cap over her hijab.

42. Defendant Doe 1 then aggressively grabbed Ms. Khalil's baseball cap off her head, causing her hijab to slide about halfway off her head and exposing her hair.

43. At that point, there were two male NYPD members behind the desk Ms. Khalil was being searched in front of, there was also a male officer behind her, and another male officer to her side.

44. Ms. Khalil repeatedly asked Defendant Doe 1 to pull her hijab forward to cover her hair.

45. Defendant Doe 1 told Ms. Khalil she would have to wait.

46. Ms. Khalil was visibly uncomfortable.

47. Ms. Khalil was in handcuffs and unable to adjust her cap or hijab herself, but she tried to adjust her head and body to obstruct the male officers' views of her hair, to no avail.

48. Defendant Doe 1 then took Ms. Khalil to a holding cell. Defendant Doe 1 advised Ms. Khalil that she was going to remove her hijab to conduct another search.

49. Ms. Khalil asked if the search would be captured by any of the cameras pointing into the cell. Defendant Doe 1 told Ms. Khalil that it would not be captured by the cameras.

50. Defendant Doe 1 then made Ms. Khalil remove the two parts of her hijab.

51. Defendant Doe 1 made Ms. Khalil undo her hair, which was worn in a bun under her hijab.

52. Defendant Doe 1 then ran her fingers through and along Ms. Khalil's scalp and hair.

53. Upon information and belief, during the search of Ms. Khalil without her hijab, two male NYPD members sat behind the desk and could see a live broadcast of her search.

54. Defendant Doe 1 then allowed Ms. Khalil to put her hijab back on.

55. The NYPD knows how to balance search procedures against unnecessarily exposing women and violating their sincerely held religious beliefs. Defendant Doe 1 was able to do a "bra check" through Ms. Khalil's clothing, without removing her clothing or exposing her body.

56. Nonetheless, Defendant Doe 1 insisted on removing the cap and hijab covering Ms. Khalil's hair to search her hair.

57. At approximately 4:45 p.m. on May 30, 2025, CUNYPS members issued Plaintiff a Summons and released Plaintiff from custody.

58. The resulting criminal proceeding against Plaintiff was dismissed in the interest of justice on grounds consistent with Plaintiff's innocence.

**Plaintiff Dana Ayoub's Experience**

59. NYPD officer Jane Doe 1 also unlawfully searched Ms. Ayoub's person.

60. Shortly after Ms. Ayoub arrived at the 26th Precinct, Defendant Doe 1 took Ms. Ayoub to a holding cell.

61. At the time, Plaintiff Ms. Khalil was also in that cell.

62. Defendant Doe 1 directed Ms. Ayoub to remove her hijab for a search.

63. Defendant Doe 1 assured Ms. Ayoub that she would be outside of the view of any men while her hair was exposed, which would violate her sincerely held religious beliefs and practices.

64. However, shortly thereafter, Ms. Ayoub observed a monitor at the front desk which broadcast the live feed from the surveillance camera in the holding cell she had been in when she was forced to remove her hijab.

65. At that time, two male NYPD members were behind the desk.

66. At approximately 4:45 p.m. on May 30, 2025, CUNYPS Officer Christopher Garcia (Tax Registration No. 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) issued Plaintiff a Summons and released Plaintiff from custody.

67. The Summons charging Plaintiff is sworn out CUNYPS Officer Christopher Garcia (Tax Registration No. 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) and bears the Summons number 4456409570.

68. On June 17, 2025, the resulting criminal proceeding against Ms. Ayoub was dismissed in the interest of justice on grounds consistent with her innocence.

69. Apart from the inherent indignities associated with arrest, particularly for a young person like Ms. Ayoub who has never been arrested before, having her religious rights and sense of bodily autonomy and dignity violated by members of the NYPD was traumatic and deeply disturbing.

**FIRST CAUSE OF ACTION**
**(For Violations of Religious Freedoms Under the First and Fourteenth Amendments Pursuant to 42 U.S.C. § 1983)**

70. Plaintiffs repeat and reallege each and every allegation made in the foregoing paragraphs as if fully set forth herein.

71. The Defendants' conduct alleged above targeted Plaintiffs religious exercise and violated their constitutional rights to the free exercise of religion.

72. Defendants' removal of Plaintiffs' religious headscarf and improper application of the City's Religious Head Covering Arrest Policy P.G. 208-83 violated Plaintiffs' free exercise of religion, in violation of the First and Fourteenth Amendments of the United States Constitution.

73. The Defendants have acted with deliberate indifference to Plaintiffs constitutional rights. As a direct and proximate result of the acts and omissions of the Defendants, the constitutional rights of Plaintiffs have been violated.

74. By acting under color of state law to deprive Plaintiffs of their rights under the First and Fourteenth Amendments, the Defendants are in violation of 42 U.S.C. § 1983, which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

75. As a direct and proximate result, Plaintiffs have suffered injuries and damages set forth above.

76. The Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such nature that punitive damages should be imposed.

77. As a result of Defendants' violations of Plaintiffs clearly established rights under the First and Fourteenth Amendments, Plaintiffs suffered grievous and continuing damages and injuries set forth herein.

## SECOND CAUSE OF ACTION
**Religious Land Use and Institutionalized Person Act**
**(42 U.S.C. § 2000cc *et seq.*)**

78. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

79. Plaintiffs' donning of the headscarf comprising their *hijab* is a sincerely held religious belief.

80. Plaintiffs "resid[ed] in or [was] confined to an institution" pursuant to RLUIPA.

81. The City meets the definition of "government" pursuant to RLUIPA.

82. To comply with this religious belief, Plaintiffs wear a religious headscarf whenever they may be in the presence of unauthorized men.

83. Plaintiffs sincerely believe that removing the headscarf in the presence of unauthorized men is morally wrong and a violation of their religious convictions.

84. By forcing Plaintiffs to remove their headscarf at the time of their arrest, the Defendants substantially burdened their religious beliefs.

85. The Defendants had no compelling interest in removing Plaintiffs' religious headscarf at the time of their arrest.

86. Defendants failed to reasonably accommodate Plaintiffs in failing to provide them with a temporary replacement head covering or providing a private place for their head covering to be searched.

87. Defendants' treatment of Plaintiffs violates rights secured by RLUIPA.

## THIRD CAUSE OF ACTION
### Intentional, Reckless and/or Negligent Infliction of Emotional Distress

88. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

89. The aforementioned removal of Plaintiffs' religious head covering was extreme and outrageous, and exceeded all reasonable bounds of decency and essentially amounted to a strip search.

90. Defendants had notice of the deep, personal significance of Plaintiffs' religious head covering by and through their training as employees of the Defendant City of New York and the NYPD.

91. Defendants, including employees, servants and/or agents of Defendant City of New York, while acting within the scope and in furtherance of their employment committed the aforementioned conduct.

92. The aforementioned conduct was unnecessary, intentional, reckless, and/or negligent and done for the sole purpose of causing severe emotional distress to Plaintiffs.

93. As a result of the aforementioned conduct, Plaintiffs suffered severe emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

94. The Individual Defendant, was, at all times relevant to this cause of action, an employee and agent of the City of New York. The Individual Defendant was acting within the scope of her employment, and her acts and omissions, as alleged above, are therefore directly chargeable to the City of New York under the state law doctrine of *respondeat superior*.

**FOURTH CAUSE OF ACTION**
**New York State Constitution, Article I § 3**

95. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

96. Article 1 § 3 of the Constitution of the State of New York provided that: "The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all humankind."

97. Defendants' forcible removal of Plaintiffs' religious head covering violated Article I § 3 by impeding the free exercise of their religion.

98. As a result of the aforementioned conduct, Plaintiffs suffered damages, including severe emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

## FIFTH CAUSE OF ACTION
**Unlawful Discrimination in Violation of NYSHRL (N.Y. Exec. Law § 296) and NYCHRL (N.Y.C. Admin. Code § 8-107)**

99. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

100. The NYPD is a place or provider of public accommodation because it provides services, facilities, accommodations, advantages and privileges through and including, but not limited to, its post-arrest processing.

101. The New York State Division of Human Rights has not granted the NYPD an exemption to § 296.

102. The New York City Commission on Human Rights has not granted the NYPD an exemption to § 8-107.

103. By sanctioning and/or engaging in the improper removal of Plaintiffs' religious head covering, failing to provide a temporary head covering upon removal, and/or by aiding, abetting, inciting or compelling such conduct, Defendants have refused, denied and withheld from Plaintiffs the accommodations, advantages, facilities and privileges of the NYPD's post-arrest and custodial services. Therefore, the acts of Defendants, who are owners, proprietors, managers, superintendents, agents and/or employees of the NYPD and the City, violated Plaintiffs' rights under the NYSHRL, N.Y. Exec. Law § 296 and NYCHRL § 8-107.

104. Plaintiffs have not filed a complaint with the New York City Commission on Human Rights, the State Division on Human Rights, any other court of competent jurisdiction, or any other administrative agency based upon the unlawful discriminatory practices alleged herein.

105. Defendants' violations of Plaintiffs' rights under the NYHRL and NYCHRL are the actual, direct and proximate cause of injuries suffered by Plaintiffs.

106. As a result of Defendants' actions, Plaintiffs has suffered the injuries and damages set forth above.

**WHEREFORE**, Plaintiffs demand the following relief against the Defendants:

a. A declaration that Defendants' conduct in removing Plaintiffs religious headscarf during arrest processing violated her constitutional right to practice her religion freely;

b. Award Plaintiffs compensatory and punitive damages in an amount that is fair, just and reasonable, to be determined at trial;

c. Award Plaintiffs reasonable attorneys' fees and costs; and

d. Grant such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Dated: August 25, 2026
New York, New York

**THE ABOUSHI LAW FIRM PLLC**

By: /s/ Tahanie Aboushi
Tahanie A. Aboushi, Esq.
1441 Broadway Fifth Floor
New York, New York 10018
Telephone: (212) 391-8500

**COHEN&GREEN P.L.L.C.**

By:____/s/________________
Leena Mohmoud Widdi
1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
t: (929) 888-9480
f: (929) 888-9457
Leena@femmelaw.com

**GIDEON ORION OLIVER**

______________________________

277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

*Attorneys for Plaintiffs*